Johst H. Doerr, J.
The May, 1972 Grand Jury in and for the County of Erie, State of New York, has filed a report of various findings and recommendations in connection with proceedings conducted by that body, and now requests an order accepting and filing such report as a public record while authorizing and directing the District Attorney to transmit copies thereof to all public officials having a proper interest therein.
The Grand Jury was empaneled by this court on May 1, 1972, and its existence was extended by successive orders to September 30, 1973.
The investigation concerned itself1, in the main, with the alleged disappearance of narcotic and dangerous drug evidence which was or should have been in the custody and under the control of the Buffalo Police Department, its officers, agents and employees.
As a result of this investigation, a Buffalo police officer was indicted, brought to trial and acquitted. That officer and a former Buffalo policeman were subsequently indicted on other charges and, having pleaded not guilty thereto, are now awaiting trial thereon. No other indictments were returned.
This court and, indeed, the entire community are deeply indebted to and most appreciative of the great efforts of this Grand Jury, and the obvious personal sacrifices by its members in their diligent inquiry for a protracted period of time.
In amplification it is pointed out that the transcript of these proceedings covers almost 3,000 pages, with some 329 exhibits marked for identification or into evidence. Their concern with the administration of criminal justice is to be commended.
This court shares that concern, well aware of the judicial responsibilities imposed.
However, ‘1 If there is authorization for a grand jury report, it must be found in either Constitution or statute.” (Matter of Wood v. Hughes, 9 N Y 2d 144, 150.)
Turning first to the New York State Constitution, there is no specific language relative to reports of this nature, while it is set forth that, “ The power of grand juries to inquire into the wilful misconduct in office of public officers, and to find indictments or to direct the filing of informations in connection *312 with such inquiries, shall never be suspended or impaired by law.” (N. Y. Const., art. I, § 6.)
This provision was adopted by the Constitutional Convention in 1938. ‘ ‘ As the discussion preceding adoption of the amendment discloses (see Revised Record of Constitutional Convention of 1938, Vol. 3, pp. 2570-2573), it had nothing whatsoever to do with the grand jury’s power to make or file a report. On the contrary, after noting that there ‘ is very grave doubt ’ whether that body has ‘ any such power * * * at all ’, its proponent, the Honorable Philip Halpern, stated that he drafted the provision ‘ very carefully to avoid the question ’ (p. 2573).” (Matter of Wood v. Hughes, 9 N Y 2d 144, 150, supra.)
Actually, the question of the power of a Grand Jury to submit a report concerned with misconduct or laxity on the. part of public officials or employees, where there was no evidence warranting indictments, was reached and decided for the first time by the Court of Appeals in Matter of Wood v. Hughes (9 N Y 2d 144, supra). While the court found no constitutional grant of authority for such report, no prohibition was cited, and the matter was left open for proper legislative action and enactment.
Subsequently, the New York State Legislature enacted section 253-a of the Code of Criminal Procedure which allowed for such reports. The constitutionality of that statute was tested and validated. 1 ‘ It has long been my view, and it was expressed in our opinion in Matter of Wood v. Hughes (9 N Y 2d 144), that, although the Constitution of this State does not itself vest the grand jury with power to make a report charging noncriminal misconduct, it does not prohibit the enactment of legislation authorizing such a report. Indeed, in Wood, the court — after noting that a strong case could be made against grand jury reports on policy grounds and that the relevant provisions of the Code of Criminal Procedure, as they then read, did not sanction them (9 N Y 2d, at pp. 153-155) —went on to say that the Legislature could, by ‘ a clear grant of legislative authority ’ (p. 156), invest the grand jury with the power to present a report condemning public officers or employees for misconduct or laxity in office.” (Matter of Second Report of November, 1968 Grand Jury of County of Erie, 26 N Y 2d 200, 203-204.)
With the constitutional aspect of the power of a Grand Jury to submit a report resolved, the remaining consideration must necessarily address itself to the effective legislation dealing with this subject and the language thereof.
*313 The order requested is not one addressed to discretion. On the contrary, the duties and obligations of the receiving court are fixed by section 190.85 of the Criminal Procedure Law. “ This section virtually repeats verbatim CCP § 253-a ” (see Commentary, McKinney’s Cons. Laws of N. Y., Book 11A, CPL 170-329, p. 186).
The Grand Jury was cognizant of this statute, and in fact states that the alternative types of reports possible under CPL 190.85 (subd. 1, pars, [a], [b], [c]) were carefully considered. It was their decision “ that this report propose recommendations for executive and/or administrative action rather than seek removal or disciplinary action against named individuals.”
By this action the Grand Jury by purpose and design intentionally waived their power and right to submit a report pursuant to the provisions of CPL 190.85 (subd. 1, pars, [a], [b]), and instead elected to proceed under paragraph (c) of subdivision 1 thereof, which reads as follows:
“ § 190.85 Grand jury; grand jury reports.
‘ ‘ 1. The grand jury may submit to the court by which it was empaneled, a report:
* * S
“ (c) Proposing recommendations for legislative, executive or administrative action in the public interest based upon stated findings.”
However, the section does not end there, and in pertinent part further provides:
‘ ‘ 2. The court to which such report is submitted shall examine it and the minutes of the grand jury and, except as otherwise provided in subdivision four, shall make an order accepting and filing such report as a public record only if the court is satisfied that it complies with the provisions of subdivision one and that:
“ (a) The report is based upon facts revealed in the course of an investigation authorized by section 190.55 and is supported by the preponderance of the credible and legally admissible evidence; and
“ (b) When the report is submitted pursuant to paragraph * * * (c) of subdivision one, it is not critical of an identified or identifiable person.” (emphasis supplied) * * * .
“ 4. Upon the submission of a report pursuant to subdivision one, if the court finds that the filing of such report as a public record, may prejudice fair consideration of a pending criminal matter, it must order such report sealed and such report may not be subject to subpoena or public inspection during the *314 pendency of such criminal matter, except upon order of the court.” (Emphasis supplied.)
As previously pointed out, two Buffalo policemen have been indicted by this Grand Jury, and are awaiting trial. I find that publicizing of the report in question at this time may prejudice their right to a fair trial and, following the statutory mandate imposed, would have no alternative but to order such report sealed during the pendency of those matters (CPL 190.85, subd. 4, supra).
Timeliness of filing and publication of the report, however, are not the decisive considerations here.
The question is not Avhether the report can be released at some future time, but whether it can be accepted and filed as a public record at any time. I find it cannot, and that it fails to meet statutory muster.
The report throughout is critical of identified or identifiable persons and, applying the litmus of CPL 190.85 (subd. 2, par. [b]), it thus fails to meet the legislative standards imposed (see Matter of South Mall Financing, 69 Misc 2d 460).
In Matter of Talerico (34 A D 2d 553) where a report accused two public officials of nonfeasance and neglect without making a recommendation of removal or disciplinary action based on the accusations, it was ordered sealed. “ There is no authority for the Grand Jury to make a report unless such a recommendation is made (Code Crim. Pro., § 253-a, subd. 1, par. [a], subd. 2; Matter of Report of 1966 October Monroe County Grand Jury, 27 A D 2d 980).”
Since the report must be sealed for the reasons stated, I do not reach or decide whether or not it is supported by a preponderance of the credible and legally admissible evidence, although a thorough examination has been made of the report and the underlying record.
The report is permanently sealed.